## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

IYMEN H. CHEHADE,

               *Plaintiff,*

v.

MARIE NEWMAN, in her individual and
official capacities,

               *Defendant.*

Case No. 1:21-cv-1036

## MOTION TO DISMISS OF THE HONORABLE MARIE NEWMAN

Pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure, Defendant the

Honorable Marie Newman, U.S. Representative for the 3rd Congressional District of Illinois,

through counsel, respectfully moves to dismiss Plaintiff Iymen H. Chehade's Complaint (Jan. 19,

2021) (ECF No. 1-1).  For the reasons set forth in the accompanying Memorandum of Points and

Authorities, the Complaint should be dismissed.

A proposed order will be submitted herewith.

               Respectfully submitted,

               */s/ Douglas N. Letter*

ED MULLEN
MULLEN LAW FIRM AT THE
WESTSIDE JUSTICE CENTER
601 S. California Avenue
Chicago, IL 60612
(312) 508-9433
ed_mullen@mac.com
(ARDC #6286924)

*Counsel for Defendant Marie Newman
in her personal capacity*

DOUGLAS N. LETTER (D.C. Bar No. 253492)
  *General Counsel*
TODD B. TATELMAN (VA Bar No. 66008)
  *Principal Deputy General Counsel*
SARAH CLOUSE (MA Bar No. 688187)
  *Associate General Counsel*
BROOKS M. HANNER (D.C. Bar No. 1005346)
  *Associate General Counsel*

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
5140 O'Neill House Office Building
Washington, D.C. 20515

(202) 225-9700 (telephone)
(202) 226-1360 (facsimile)
douglas.letter@mail.house.gov

*Counsel for Defendant Marie Newman*
*in her official capacity*

March 25, 2021

**CERTIFICATE OF SERVICE**

I hereby certify that on March 25, 2021, I caused the foregoing Motion to Dismiss and the accompanying Memorandum of Points and Authorities to be filed via the CM/ECF system for the U.S. District Court for Northern District of Illinois, which I understand caused service on all registered parties.


*/s/ Douglas N. Letter*
DOUGLAS N. LETTER

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

IYMEN H. CHEHADE,

*Plaintiff,*

v.

MARIE NEWMAN, in her individual and
official capacities,

*Defendant.*

Case No. 1:21-cv-1036

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO
DISMISS OF THE HONORABLE MARIE NEWMAN**

ED MULLEN
MULLEN LAW FIRM AT THE
WESTSIDE JUSTICE CENTER
601 S. California Avenue
Chicago, IL 60612
(312) 508-9433
ed_mullen@mac.com
(ARDC #6286924)

*Counsel for Defendant Marie Newman*
*in her personal capacity*

DOUGLAS N. LETTER (D.C. Bar No. 253492)
  *General Counsel*
TODD B. TATELMAN (VA Bar No. 66008)
  *Principal Deputy General Counsel*
SARAH CLOUSE (MA Bar No. 688187)
  *Associate General Counsel*
BROOKS M. HANNER (D.C. Bar No. 1005346)
  *Associate General Counsel*

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
5140 O'Neill House Office Building
Washington, D.C. 20515
(202) 225-9700 (telephone)
(202) 226-1360 (facsimile)
douglas.letter@mail.house.gov

*Counsel for Defendant Marie Newman*
*in her official capacity*

March 25, 2021

**INTRODUCTION**

Plaintiff Iymen H. Chedade seeks specific performance and money damages arising from an alleged breach of contract by the Honorable Marie Newman, U.S. Representative for the 3rd Congressional District of Illinois, *see* Compl. (ECF No. 1-1). For the reasons set forth below, Mr. Chehade's claim against Congresswoman Newman must be dismissed because this Court lacks subject matter jurisdiction and Mr. Chehade fails to state a claim upon which relief can be granted.

**BACKGROUND**

Mr. Chehade seeks specific performance and money damages arising from an alleged breach of an employment contract between himself and Ms. Newman for a position on her Congressional staff in the event Ms. Newman prevailed in the 2020 election for the 3rd Congressional District of Illinois. *See* Compl. at 3-6 (ECF 1-1).[1] At the time the contract was signed, Marie Newman was a private citizen and candidate for Congress. The Complaint alleges that "Newman offered Chehade employment as Foreign Policy Advisor and Legislative or District Director." *Id*. at 3. According to the Complaint, Mr. Chehade accepted this offer and entered into the employment contract on or about December 26, 2018. *Id*. at 3. The alleged agreement provided that Mr. Chehade would be hired more than two years later as a member of Ms. Newman's future Congressional staff and compensated with a salary between $135,000 and $140,000 per year, and it laid out several other terms of employment. *Id.* at 4.

Mr. Chehade alleges that Ms. Newman "promised that, should she be elected to office, she would employ Chehade [in her Congressional office] with a start date of January 3, 2021 and

---

[1] Citations to the Complaint reference the ECF-stamped page numbers of the Complaint (ECF No. 1-1) as attached to the Notice of Removal (ECF No. 1).

continuing as long as Newman remains Representative." *Id.* at 4. Ms. Newman won the general election for the 3rd Congressional District of Illinois on November 3, 2020. The Complaint asserts that following her election, Congresswoman Newman informed Mr. Chehade "that she did not intend to fulfill the terms of the employment contract," *id.* at 4, and "continues to refuse to honor the terms" of the alleged agreement. *Id.* at 5.

On January 19, 2021, Mr. Chehade filed suit in the Circuit Court of Cook County, Illinois, seeking specific performance (actual employment by the United States in the Office of Congresswoman Newman) and $280,000 in money damages. *Id.* at 7; Circuit Court of Cook County Docket (ECF 1-2). The Complaint states that it is asserted against Congresswoman Newman in both her official and individual capacities. The Complaint was served on February 1, 2021, and pursuant to 28 U.S.C. § 1442, Congresswoman Newman timely removed this case, without opposition, to this Court on February 23, 2021, *see* Notice of Removal (ECF No. 1). Congresswoman Newman sought a stay of this case pending the resolution of a related administrative proceeding, *see* Mot. to Stay (ECF No. 11), however, this Court denied that request at a hearing on March 18, 2021, *see* Min. Order (ECF No. 17). Congresswoman Newman now moves to dismiss.

## ARGUMENT

Federal Rule of Civil Procedure 12(b)(1) compels dismissal of this case because the doctrine of sovereign immunity bars Mr. Chehade's claim against Congresswoman Newman. Moreover, although the Tucker Act waives sovereign immunity for certain contract claims, that waiver is not applicable under these circumstances. Additionally, the claim against Congresswoman Newman in her official and individual capacities must be dismissed pursuant to Rule 12(b)(6) because Mr. Chehade fails to state a claim upon which relief can be granted. As

2

discussed more fully below, the employment agreement he alleges is binding is unenforceable because Ms. Newman did not have the authority to enter into such an agreement, and the agreement violates public policy. Moreover, Congresswoman Newman could not breach the contract in her individual capacity because she could only hire Mr. Chehade to work in her Congressional Office in her official capacity.

## I.      THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER THE OFFICIAL CAPACITY CLAIMS AGAINST CONGRESSWOMAN NEWMAN.

When a motion to dismiss challenges the facial sufficiency of a complaint—as it does here—the court must "accept the complaint's well-pleaded factual allegations as true and draw reasonable inferences from those allegations in the plaintiff's favor." *Transit Express, Inc. v. Ettinger*, 246 F.3d 1018, 1023 (7th Cir. 2001). Plaintiff bears the burden of establishing subject matter jurisdiction. *See, e.g.*, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

Here, subject matter jurisdiction is lacking because the doctrine of sovereign immunity bars Mr. Chehade's claims against Congresswoman Newman in her official capacity. Moreover, the Tucker Act does not provide Mr. Chehade with an applicable waiver of that immunity. Accordingly, this Court should dismiss the Complaint pursuant to Rule 12(b)(1).

### A.  The Official Capacity Claims against Congresswoman Newman are Barred by Sovereign Immunity.

Mr. Chehade alleges that Congresswoman Newman, in her capacity as a federal official, breached a contact entered into while she was still a candidate for office. The allegations giving rise to the breach could not have occurred until Congresswoman Newman was sworn into office on January 3, 2021. This Court lacks subject matter jurisdiction over Mr. Chehade's breach of contract claims against Congresswoman Newman in her official capacity because they are barred by the doctrine of sovereign immunity. "The United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that

3

court's jurisdiction to entertain the suit." *United States v. Sherwood*, 312 U.S. 584, 586 (1941) (citations omitted); *Boron Oil Co. v. Downie*, 873 F.2d 67, 69 (4th Cir. 1989) ("[A]n action seeking specific relief against a federal official, acting within the scope of his delegated authority, is an action against the United States, subject to governmental privilege of immunity.") (citing *Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 688 (1949)). This immunity extends to Members of Congress when sued in their official capacities. *See Rockefeller v. Bingaman*, 234 F. App'x 852, 855 (10th Cir. 2007) ("[S]overeign immunity forecloses [Plaintiff's] claims against [Members of Congress] as individuals acting in their official capacities."); *Keener v. Congress*, 467 F.2d 952, 953 (5th Cir. 1972) (per curiam) (sovereign immunity renders Congress immune from suit); R. & R., *Goodnow v. 3rd Congressional District of Florida*, No. 1:20-cv-00257 (N.D. Fla. Mar. 17, 2021) (Jones, Mag. J.) (recommending dismissal of breach of contract claim removed from state court against a Member of Congress based on sovereign immunity) (attached as Ex. A).

A waiver of sovereign immunity cannot be implied but "must be unequivocally expressed in statutory text." *Lane v. Pena*, 518 U.S. 187, 192 (1996); *see also, e.g.*, *United States v. Nordic Vill., Inc.*, 503 U.S. 30, 33 (1992) ("Waivers of the Government's sovereign immunity, to be effective, must be unequivocally expressed." (quotation marks omitted)). It is a plaintiff's burden to prove "that the government has unequivocally waived its immunity." *Tri-State Hosp. Supply Corp. v. United States*, 341 F.3d 571, 575 (D.C. Cir. 2003).

There can be no dispute that the Complaint here was filed in state court, where, "[u]nequivocally, sovereign immunity shields the federal government from suit." *Wolff v. United States*, 76 F. App'x 867, 869 (10th Cir. 2003) (citing cases); *accord Houston Bus. Journal, Inc. v. Office of Comptroller of Currency*, 86 F.3d 1208, 1211 (D.C. Cir. 1996). Of

great importance in this case, because jurisdiction on removal is derivative, federal courts cannot acquire subject matter jurisdiction if the transferor state court lacked it in the first instance. *See S.E.C. v. Nutmeg Grp., LLC*, No. 09 C 1775, 2011 WL 5042092, at *3 (N.D. Ill. Oct. 19, 2011) (citing *Rodas v. Seidlin*, 656 F.3d 610, 615 (7th Cir. 2011) ("Under the doctrine of derivative jurisdiction, a federal court acquires no jurisdiction over a removal pursuant to 28 U.S.C. § 1442 where the state court lacks jurisdiction of the subject matter.")). Thus, when—as here—the state court lacks subject matter jurisdiction prior to removal, that jurisdictional defect follows the matter to federal court, where the matter must be dismissed. *See Abu-Humos v. First Merit Bank*, No. 15-cv-06961, 2015 WL 7710374, at *1 (N.D. Ill. Nov. 30, 2015); *see also, e.g.*, *Bullock v. Napolitano*, 666 F.3d 281, 286 (4th Cir. 2012).

Absent an express and unequivocal statutory waiver, courts, whether state or federal, lack jurisdiction over claims against Members of Congress sued in their official capacities. *See Rockefeller*, 234 F. App'x at 855-56; *see also Keener*, 467 F.2d at 953. Mr. Chehade's Complaint identifies no relevant statutory waiver of sovereign immunity—much less an express, unequivocal one. This absence is not surprising because there are no such waivers. Accordingly, this Court must dismiss any claim against Congresswoman Newman in her official capacity for lack of jurisdiction.

### B. The Tucker Act Does Not Waive Sovereign Immunity for Mr. Chehade's Claims.

To the extent Mr. Chehade asserts that Congresswoman Newman breached a contract within the scope of her official duties, the Tucker Act governs disposition of such claims. *See* 28 U.S.C. § 1491 ("The United States Court of Federal Claims shall have jurisdiction to render judgment … upon any express or implied contract with the United States …."). While the Tucker Act provides a limited waiver of sovereign immunity for certain contract claims against

5

the United States or its component entities, it "confers exclusive jurisdiction for [claims above $10,000] on the United States Court of Federal Claims, not the federal district courts." *Williams v. Trump*, -- F. Supp. --, 2020 WL 6118560, at *7 (N.D. Ill. Oct. 16, 2020). Mr. Chehade's claim here on its face against Congresswoman Newman greatly exceeds $10,000 and seeks specific performance. Under the Tucker Act, neither form of relief is available to him in this Court.

Mr. Chehade claims that Congresswoman Newman breached the contract for his employment in her Congressional office. The Congresswoman's decisions about who to hire are a quintessential part of her official duties. Further, Congressional employees are compensated with federally appropriated funds, not personal or campaign funds. In other words, the plain terms of the alleged agreement relate to a job that the Congresswoman could only fulfill as part of her official Congressional duties. Because the Tucker Act requires that these types of claims proceed exclusively in the Court of Federal Claims, sovereign immunity bars pursuit of Mr. Chehade's breach of contract claim in state court or this Court.

Moreover, Mr. Chehade's request for specific performance—actual employment on the Congresswoman's staff—is not attainable as a matter of law because the Tucker Act only provides a waiver of sovereign immunity for money damages. *F.D.I.C. v. Gravee*, No. 94 C 4589, 1996 WL 494251, at *5 (N.D. Ill. Aug. 27, 1996) (quoting *Sharp v. Weinberger*, 798 F.2d 1521 (D.C. Cir. 1986) (Scalia, J.) ("The sole remedy for an alleged breach of contract by the federal government is a claim for money damages .... The waiver of sovereign immunity does not run to actions for … specific performance in contract cases[.]")). The Tucker Act thus impliedly forbids the specific performance relief that Mr. Chehade seeks. *See, e.g.*, *Richardson v. Morris*, 409 U.S. 464, 465 (1973) ("[T]he [Tucker] Act has long been construed as authorizing only actions for money judgments and not suits for equitable relief against the United States.");

6

*Robbins v. U.S. Bureau of Land Mgmt.*, 438 F.3d 1074, 1082 (10th Cir. 2006) ("[T]he Tucker and Little Tucker Acts 'impliedly forbid' federal courts from ordering declaratory or injunctive relief, at least in the form of specific performance, for contract claims against the government[.]" (footnote omitted)). Simply put, because Mr. Chehade cannot obtain the specific performance relief he seeks in any forum, his claim must be limited to money damages. *See Todd v. United States*, 386 F.3d 1091, 1093 (Fed. Cir. 2004) ("The jurisdiction of the Court of Federal Claims under the Tucker Act is limited to actual, presently due money damages from the United States." (quotation marks omitted)).

Similarly, Mr. Chehade's claim for breach of contract money damages is also not available in this forum. The Tucker Act does not waive sovereign immunity for breach of contract claims against a federal official in either Illinois state court or this Court. As already explained, "suits against the U.S. brought within the Tucker Act's waiver of sovereign immunity must be brought in the United States Court of Federal Claims." *Greenleaf Ltd. P'ship v. Ill. Housing Dev. Auth.*, Nos. 08 C 2480, 08 C 3446, 2009 WL 449100, at *3 (N.D. Ill. Feb. 23, 2009). Because sovereign immunity has not been waived in this Court for any of the relief sought by Mr. Chehade, the Complaint must be dismissed.

Alternatively, should the Court find the conditions satisfied, it has the authority, pursuant to 28 U.S.C. § 1631, to transfer this case to the Court of Federal Claims. This case could not have been removed directly to the Court of Federal Claims. *See* 28 U.S.C. § 1442(a) (limiting federal officer removal "to the district court of the United States for the district and division embracing the place wherein it is pending"). However, "[i]f the court finds jurisdiction lacking, [i]t shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed." *Menzies v. N. Trust*

7

*Corp.*, No. 15-cv-3403, 2021 WL 170738, *5 (N.D. Ill. Jan. 19, 2021) (quotation marks

omitted)); *see also Wronke v. Marsh*, 767 F.2d 354 (7th Cir. 1985) (transferring to Federal

Circuit an appeal of a claim based in part on the Tucker Act under 28 U.S.C. § 1631).

## II.   THE COMPLAINT FAILS TO STATE A CLAIM AGAINST MARIE NEWMAN IN HER OFFICIAL CAPACITY.

Even if there were jurisdiction for Mr. Chehade to sue in this Court, this case would have

to be dismissed now in any event on the alternative ground that Mr. Chehade and

Congresswoman Newman never entered into a valid contract as a matter of law because Marie

Newman, the candidate for Congressional office, obviously lacked any authority to bind the

United States Government to an employment contract before she was sworn in as a Member of

Congress.  Accordingly, Federal Rule of Civil Procedure 12(b)(6) also compels dismissal of this

case.

To establish a valid contract with the United States, a plaintiff must demonstrate: "(1)

mutuality of intent, (2) consideration, (3) lack of ambiguity in the offer and acceptance, and (4)

that the government official whose conduct the contractor relies upon has actual authority to bind

the government in contract."  *Steinberg v. United States*, 90 Fed. Cl. 435, 444 (2009) (citing

*Anderson v. United States*, 344 F.3d 1343, 1353 (Fed. Cir. 2003)).  The burden of proving the

existence of a contract with the United States rests with the plaintiff and requires a showing that

there is "something more than a cloud of evidence that could be consistent with a contract to

prove a contract and enforceable contract rights."  *D & N Bank v. United States*, 331 F.3d 1374,

1377 (Fed. Cir. 2003).

Critically lacking here is any allegation satisfying the fourth element: that Ms. Newman,

at the time the contract was allegedly entered into, had actual authority to bind the United States

in contract. In fact, as a matter of law, Ms. Newman lacked any such authority as a mere candidate for Congressional office.

A government official's actual authority to bind the United States must be expressly provided for in law or an implied requirement of her assigned duties. *Sin Hang Lee v. United States*, 142 Fed. Cl. 722, 729 (2019). Thus, "the [g]overnment, unlike private parties, cannot be bound by the apparent authority of its agents." *Id.* (citation omitted). Any individual who enters into a contract with the Federal Government "takes the risk of accurately ascertaining the authority of the agents who purport to act for the Government[.]" *Trauma Serv. Grp. v. United States*, 104 F.3d 1321, 1325 (Fed. Cir. 1997). A plaintiff bears the burden to "demonstrat[e] the relevant government representative had actual authority to enter the alleged contract." *Yifrach v. United States*, 145 Fed. Cl. 691, 698-99 (2019), *aff'd,* 825 F. App'x 899 (Fed. Cir. 2020).

"Absent actual authority on the part of the Government's agent to bind the Government in contract, no binding contract can exist, regardless of the agent's representations." *Doe v. United States*, 100 F.3d 1576, 1584 (Fed. Cir. 1996). This requirement is necessarily strict, otherwise "federal expenditures would be wholly uncontrollable if Government employees could, of their own volition, enter into contracts obligating the United States." *City of El Centro v. United States*, 922 F.2d 816, 820 (Fed. Cir. 1990).

In December 2018, when the alleged agreement at issue here was entered into, Ms. Newman was not a federal official, and she would not be so for more than two years. She therefore obviously had no actual or implied authority to bind the United States in contract, or to make any binding offer of federal employment to Mr. Chehade. The written contract relied on here by Mr. Chehade expressly recognizes this fact and is contingent upon her election to Congress to effectuate its terms. *See* Compl., Ex. A, ¶ 1 ("In the event that Newman is elected as

9

U.S. Representative to the Third Congressional District of Illinois … for the congressional term beginning in January of 2021…").  Accordingly, it is indisputable that as a then-candidate for elected office, Ms. Newman lacked any actual authority to bind or otherwise obligate the United States for the purpose of employing Mr. Chehade.

Further, then-candidate Newman had no implied authority either because the House's regulations prohibit exactly this type of employment contract.  "The doctrine of implied actual authority cannot be used to create an agent's actual authority to bind the government in contract when the agency's internal procedures specifically preclude that agent from exercising such authority." *Cruz-Pagan v. United States*, 35 Fed. Cl. 59, 62 (Fed. Cl. 1996); *see also Cal. Sand & Gravel, Inc. v. United States*, 22 Cl. Ct. 19, 27 (1990), *aff'd,* 937 F.2d 624 (Fed. Cir. 1991) (per curiam) ("[A] person with no actual authority may not gain actual authority through the court-made rule of implied actual authority.").

Employees of a Member of Congress are federal employees, *see* 5 U.S.C. § 2105, and their salaries and related benefits, such as retirement and health insurance, are all paid for with federally appropriated funds, *see* Consolidated Appropriations Act of 2021, Pub. L. No. 116-260, div. I, tit. 1 (2020) (appropriating funds to pay salaries, allowances and expenses, including employment benefits for the House of Representatives).  House Members are each appropriated a lump sum of funds known as their Members' Representational Allowance ("MRA"), which is used to pay all official expenses related to the operation of their offices.  *See* 2 U.S.C. § 5341.  A Member's ability to obligate federal funds in support of office operations, including paying staff salaries, is limited to the authority provided to them by their MRA and the corresponding regulations that are promulgated by the Committee on House Administration ("CHA").  *See* U.S.

10

House of Representatives Comm. on House Admin., 116th Cong., *Members' Congressional Handbook* at 7 (2020).[2]

Generally, employment in a Congressional office is on an "at-will" basis.[3]  Federal law limits each Member of the House to 18 full-time permanent employees and 4 part-time, temporary, or intern employees, divided between the Member's Washington, D.C. and district offices.  2 U.S.C. § 5321.  Currently, Congresswoman Newman employs the maximum number of full-time permanent employees allowed by law.  Pursuant to CHA regulations, Members may engage contract employees in excess of the statutory ceiling, but only for limited purposes such as "non-legislative and non-financial office services," and only for a "specified period of time not to exceed the Member's current term."  *See Members' Congressional Handbook* at 7.

Here, because the alleged agreement specifically contemplated hiring Mr. Chehade for positions that are considered legislative in nature—Chief Foreign Policy Advisor and Legislative Director—and expressly contained the potential to extend beyond Congresswoman Newman's current term in the House, *see* Compl. at 4 ("as long as Newman remains Representative"), it violates existing CHA regulations and, therefore, is invalid.

Put plainly, because Ms. Newman obviously had no authority to bind the United States to an employment contract signed before she was a Member of Congress, Mr. Chehade has not established and cannot establish that he had any valid employment contract for a position with the U.S. House of Representatives.  "It is … well-settled in the principles of general contract law that courts may not enforce contracts that are contrary to public policy."  *Fomby-Denson v. Dep't*

---

[2] *Available at* https://cha.house.gov/sites/democrats.cha.house.gov /files/2020_116th%20Members%27%20Congresional%20Handbook_11-06.pdf.

[3] *See* https://www.house.gov/employment ("Employment with the U.S. House of Representatives is at-will.").

*of Army*, 247 F.3d 1366, 1374 (Fed. Cir. 2001). To order enforcement of a contract against the United States where one party clearly lacked authority to contract would violate these well-settled principles.

### III. THE COMPLAINT FAILS TO STATE A CLAIM AGAINST MARIE NEWMAN IN HER INDIVIDUAL CAPACITY.

The employment agreement at issue here was signed by Congresswoman Newman prior to her election. *See* Compl., Ex. A, ¶ 1a. The agreement involved potential employment by Mr. Chehade as Chief Foreign Policy Advisor and either District Director or Legislative Director in Congresswoman Newman's Congressional Office in the event that she was elected. *Id.* Although the agreement was signed before Congresswoman Newman was elected, it contemplated employment of Mr. Chehade in her Congressional Office after she was elected. *See id.* ¶¶ 1a, 2a. If Mr. Chehade were employed in Congresswoman Newman's Office, he would have been an employee of the United States, as opposed to an employee of Congresswoman Newman personally. *See* 5 U.S.C. § 2105(a)(1)(B) (an individual hired by a Member of Congress in her official capacity is an employee of the United States); *see Liberation News Service v. Eastland*, 426 F.2d 1379, 1382 (2d Cir. 1970) (noting that a Member of Congress's staff members "are 'employees of the United States,' 5 U.S.C. § 2105."). Indeed, Mr. Chedhade agreed that he would "abide by all applicable federal employment and other policies and regulations." *See* Compl., Ex. A, ¶ 2a.

Mr. Chehade cannot enforce the employment agreement against Congresswoman Newman in her individual capacity on the grounds that: (1) the agreement is void because Congresswoman Newman did not have authority to enter into it at the time it was signed; (2) the agreement is void because it violates public policy; and (3) Congresswoman Newman could not breach the contract in her individual capacity.

**A.    The Employment Agreement is Void Because Congresswoman Newman Did Not Have Authority to Enter into the Agreement.**

As set forth in Section II, *supra*, Congresswoman Newman did not have the authority to bind the United States to a contract when the employment agreement was signed.  Under Illinois law, a contract made without authority is null and void.  *See Melvin v. State*, 41 Ill. Ct. Cl. 88, 99 (1989) ("authorizing payment of claims against the State under any agreement or contract made without express authority of law is null and void") (citing *Fergus v. Brady*, 277 Ill. 272 (1917)); *see also 1550 MP Rd., LLC v. Teamsters Local Union No. 700*, 2019 IL 123046, ¶ 28 (a contract is void *ab initio* where party lacks legal authority to enter contract) (citations omitted).  *Melvin* recognized that a party contracting with a public entity is presumed to know the limitations of the public entity to contract and further has the obligation to ascertain the actual authority of the person entering the contract.  *Melvin*, 41 Ill. Ct. Cl. at 99-100 (citing *Midwest Truck & Sales v. State*, 33 Ill. Ct. Cl. 82 (1979)).

The employment agreement signed by Congresswoman Newman prior to her election purported to bind the United States to employ Mr. Chehade if and when she was elected.  At the time Congresswoman Newman signed the agreement, she did not have the authority to bind the United States to employ Mr. Chehade, and thus, the employment agreement is null and void.  Accordingly, Mr. Chehade's claim for breach of contract against Congresswoman Newman in her individual capacity must be dismissed as a matter of law.

**B.    The Employment Agreement is Void Because it Violates Public Policy.**

In the employment agreement, Mr. Chehade agreed to follow all federal employment policies.  *See* Compl, Ex. A, ¶ 2a.  As discussed in Section II, *supra*, it is federal policy that employees in a Congressional Office are 'at will' employees.  The Committee on House Administration has promulgated regulations permitting Members of Congress to contract with

13

individuals only in limited circumstances not applicable here. Additionally, the Rules of the

House of Representatives prohibit Members from defraying official expenses, such as

compensation, and using accounts maintained in their personal capacities. *See* Rule XXIV(1)-

(3), Rules of the House of Representatives (117th Cong.) (2021).[4] These regulations express the

public policy of the federal government. *See Boatman v. Hammons*, 164 F.3d 286, 289 (6th Cir.

1998) (federal regulations have the force of law) (citations omitted); *Shape of Things to Come,*

*Inc. v. Cnty. of Kane*, 588 F. Supp. 1192, 1193 (N.D. Ill. 1984) (noting that the Rules of the

House "have the force of law."); *Am. Access Cas. Co. v. Reyes*, 2012 IL App (2d) 120296, ¶ 8

("Statutes are an expression of public policy.") (citing *St. Paul Fire & Marine Ins. Co. v. Smith*,

337 Ill. App. 1054, 1058 (1st Dist. 2003)).

A contract that violates public policy should not be enforced. *See Rome v. Upton*, 271 Ill.

App. 3d 517, 519-20 (1st Dist. 1995) (citing *Holstein v. Grossman* (1993), 246 Ill. App. 3d 719,

725; *O'Hara v. Ahlgren, Blumenfeld & Kempster* (1989), 127 Ill. 2d 333, 341). Public policy is

reflected in various forms of the law, such as statutes and judicial decisions. *Id.* at 520 (citations

omitted). The question of whether a contract in unenforceable because it violates public policy is

a question of law, thus appropriate for a motion to dismiss. *Id.*

Here, there is a federal public policy expressed in regulations promulgated by the House

and Committee on House Administration governing employees of the United States hired by

Members of Congress. This federal public policy prohibits Members of Congress from either

officially or unofficially entering into contracts to employ individuals to serve in legislative roles

in their Office. This public policy is particularly relevant here because Mr. Chehade expressly

---

[4] *Available at* https://rules.house.gov/sites/democrats.rules.house.gov/files/117-House-Rules-Clerk.pdf.

14

agreed to follow federal employment policies. The employment agreement between Congresswoman Newman and Mr. Chehade is void because it violates public policy as expressed in the House's Rules and Committee regulations governing employees hired by Members of Congress. Accordingly, Mr. Chehade's breach of contract claim against Ms. Newman in her individual capacity should be dismissed.

### C. Congresswoman Newman Could Not Breach the Agreement in her Individual Capacity.

The Complaint alleges one count for breach of contract against Congresswoman Newman in both her individual and official capacities. The allegations of the Complaint, however, do not distinguish between actions taken or not taken by Congresswoman Newman in her individual and official capacities. Paragraph 27 of the Complaint sets forth the provision of the contract allegedly breached by Congresswoman Newman: "The Agreement required Defendant to employ Plaintiff as a Foreign Policy Advisor and either District Director or Legislative Director should Defendant be elected to office." *See* Compl. at 9. Any employee of Congresswoman Newman's Congressional Office could only be hired by her in her official capacity. *See* 5 U.S.C. § 2105 (employee of a Member of Congress is a federal employee). She could not in her individual or private capacity hire Mr. Chehade as an employee of the United States, and thus could not breach an employment contract (to the extent it is enforceable) in her individual capacity. Therefore, the Court should dismiss the breach of contract claim against Congresswoman Newman in her individual capacity.

### CONCLUSION

For all of the reasons set forth above, Mr. Chehade's Complaint must be dismissed.

Respectfully submitted,

ED MULLEN

MULLEN LAW FIRM AT THE
WESTSIDE JUSTICE CENTER

601 S. California Avenue

Chicago, IL 60612

(312) 508-9433

ed_mullen@mac.com

(ARDC #6286924)

*Counsel for Defendant Marie Newman*
*in her personal capacity*

*/s/ Douglas N. Letter*

DOUGLAS N. LETTER (D.C. Bar No. 253492)
  *General Counsel*
TODD B. TATELMAN (VA Bar No. 66008)
  *Principal Deputy General Counsel*
SARAH CLOUSE (MA Bar No. 688187)
  *Associate General Counsel*
BROOKS M. HANNER (D.C. Bar No. 1005346)
  *Associate General Counsel*

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES[*]
5140 O'Neill House Office Building
Washington, D.C. 20515
(202) 225-9700 (telephone)
(202) 226-1360 (facsimile)
douglas.letter@mail.house.gov

*Counsel for Defendant Marie Newman*
*in her official capacity*

March 25, 2021

---

[*] The Office of General Counsel wishes to acknowledge the assistance of law clerk Jennifer Kaplan, a student at The Catholic University of America, Columbus School of Law, in preparing this brief.

16