IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

Iymen Chehade,

            Plaintiff,

    v.

Marie Newman, in her individual and
   official capacities,

            Defendant.

Case No. 21-cv-1036

**Honorable Jorge L. Alonso**

### Plaintiff's Response to Defendant's Motion to Dismiss and Motion to Amend

The plaintiff, Iymen Chehade ("Plaintiff" or "Chehade"), respectfully submits the following response in opposition to the defendant Congresswoman Marie Newman's ("Defendant" or "Newman") Motion to Dismiss:

I.      <u>Introduction and Summary of Argument</u>

Newman induced Chehade into refraining from running for office in the Third Congressional District by offering to employ him in her office, should she be elected, as Chief Foreign Policy Advisor and either District Director or Legislative Director. Compl. ¶¶ 8-9. She signed an employment contract to that effect, was elected to office, and now uses that office to claim immunity from suit. Compl. Ex. A. She also claims she did not have authority to enter into the contract she signed, and therefore cannot be sued in either her personal or official capacity.

For the reasons detailed herein, sovereign immunity does not shield Defendant from the jurisdiction of this Court. Because Newman needed neither federal funds

1

nor permission from any other government entity to employ Chehade, she, and not the United States, is the appropriate defendant to this action for the purpose of the sovereign immunity analysis. Moreover, Newman had conditional authority to bind her congressional office to the contract and the condition precedent to the contract's validity did occur.

II.  <u>This Court has jurisdiction over Plaintiff's claims.</u>

Newman seeks to dismiss the instant action pursuant to Federal Rule of Civil Procedure Rule 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

"A motion to dismiss under Rule 12(b)(1) tests the jurisdictional sufficiency of the complaint, accepting as true all well-pleaded factual allegations and drawing reasonable inferences in favor of the plaintiffs." *Bultasa Buddhist Temple of Chicago v. Nielsen*, 878 F.3d 570, 573 (7th Cir. 2017).

In evaluating whether a complaint states a claim pursuant to Rule 12(b)(6), courts take as "true all well-pleaded factual allegations and making all possible inferences from the allegations in the plaintiff's favor." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011).

**A. Plaintiff's claims are not barred by the doctrine of sovereign immunity.**

1. Official capacity claim

Newman argues that because "Congressional employees are compensated with federally appropriated funds, not personal or campaign funds," the claim is barred.

MTD p. 6. "Sovereign immunity is the privilege of the sovereign not to be sued without its consent." *Virginia Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 253 (2011). Chehade does not dispute that the United States is immune from suit except when it waives that immunity. MTD pp. 3-4.

The sovereign immunity of the United States is not automatically extended to all its employees, however, even when they act in their official capacities, unless suit would utilize funds from the public treasury. As the Seventh Circuit explained,

> However, the extent to which sovereign immunity may bar an action against a federal officer for acts done in his or her official capacity is an extraordinarily difficult question that Supreme Court decisions have failed to clarify adequately. Regardless of whether or not the United States is a named defendant, a suit is considered to be against the sovereign if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration.

*Clark v. United States*, 691 F.2d 837, 839–40 (7th Cir. 1982) (citations and quotation marks removed).

Here, suit would not necessarily have any impact on the public treasury. In particular, Defendant is wrong in contending that congressional employees must be compensated with federally appropriated funds. The Congressional Handbook to which they cite says the opposite: "A Member may expend personal funds in support of official and representational duties." Congressional Handbook at 2.[1] Further, the handbook makes clear that Newman has sole discretion over not only whom to employ but the conditions of that individual's employment. It states, "Each Member

---

[1] Def. MTD n. 2 (citing Committee on House Administration, Members' Congressional Handbook, July 25, 2018, available at https://cha.house.gov/sites/democrats.cha.house.gov/files/2020_116th%20Members%27%20 Congresional%20Handbook_11-06.pdf) ("Congressional Handbook")) (emphasis added).

is the employing authority; the Member determines the terms and conditions of employment and service for their staff." *Id.* p. 4.

Although the provision goes on to say that the "terms and conditions must be consistent with applicable federal laws and House Rules," Newman has not identified any way in which the employment contract here violates those laws and rules. In arguing that congressional staffers are employees of the United States, Defendant contends that "employment in a Congressional office is on an "at-will" basis," citing to the website of the House of Representatives. MTD p. 11. This contention is without legal support, however. Congressional employment is presumed to be at will "barring some explicit agreement to the contrary entered into by a federal officer having authority to contract." *House v. United States*, 14 Cl. Ct. 32, 36 (1987). Here, there is an explicit agreement to the contrary. Compl. Ex. A.

Ignoring the provision that explicitly allows members of congress to pay office expenses from their personal funds, Defendant cites to a seemingly contradictory prohibition against maintaining an "unofficial office account" to pay out expenses in support of the Member's duties. Rule XXIV(1)- (3), Rules of the House of Representatives (117th Cong.) (2021). That rule, however, limits the definition of "unofficial office account" to "an account or repository in which funds are received for the purpose of defraying otherwise unreimbursed expenses allowable under section 162(a) of the Internal Revenue Code of 1986 as ordinary and necessary in the operation of a congressional office . . . ." *Id.* at clause 3. In other words, members of congress are prohibited from establishing an account to defray expenses for the

4

purpose of obtaining a tax deduction. This prohibition does not contradict the explicit provision allowing members of congress to pay for office expenses from their personal funds. It is therefore not the case that Newman's employment of Chehade necessarily impacts the treasury.

Moreover, this controversy does not come within the exclusive jurisdiction of the Court of Federal Claims because only actions "against the United States" come within its jurisdiction. *Fed. Sav. & Loan Ins. Corp. v. Quinn*, 419 F.2d 1014, 1017 (7th Cir. 1969); see also *Stewart v. United States*, 130 Fed. Cl. 172, 178 (2017) ("[t]he only proper defendant for any matter before this court is the United States, not its officers, nor any other individual.") (internal citations removed).

Chehade's official capacity claim is therefore neither barred by sovereign immunity nor within the exclusive jurisdiction of the Court of Federal Claims.

2.  Personal capacity claim

Nor does sovereign immunity bar Chehade's individual capacity claim. Plaintiffs need not establish waiver of sovereign immunity to sue a federal employee in her personal capacity. *Coulibaly v. Kerry*, 213 F. Supp. 3d 93, 128 (D.D.C. 2016) (citing *Majano v. United States*, 469 F.3d 138, 139 (D.C. Cir. 2006)).

III.  <u>The complaint states a claim against Newman in her official and personal capacities.</u>

  A.  **Plaintiff states a claim against Defendant in her official capacity.**

Newman argues that she did not have capacity to enter into a binding contract because she was not yet an elected representative at the time she signed it. MTD

pp. 8-12. Newman's status at the time of the execution of the agreement is not dispositive since the existence of a binding contract was *conditional* on her being elected to office.

Conditional contracts come in two forms. In the first, some act or event must occur before a party is obligated to perform. With the second, some act or event is "necessary to the formation" of the contract. *Catholic Charities of Archdiocese of Chicago v. Thorpe*, 318 Ill.App.3d 304, 307 (1st Dist. 2000). In those cases, "[t]he contract is neither enforceable nor effective until the condition is performed or the contingency occurs." *Mijes v. Primerica Life Ins. Co.*, 317 Ill.App.3d 1097, 1100-01 (1st Dist. 2000); *Taylor v. JPMorgan Chase Bank, N.A.*, 958 F.3d 556, 563 (7th Cir. 2020) (in conditional contracts, "an offeror cannot be said to have agreed to the terms if the occurrence on which the party conditioned any agreement has not yet come to pass") (quoting Richard A. Lord, Williston § 4:27). Such contracts typically contain express language specifying the condition that must be satisfied before the contract becomes effective. *Thorpe*, 318 Ill.App. 3d at 308.

Although Newman of course did not have authority to hire employees before being elected into office, she did have conditional authority to do so. As the contract at issue explicitly acknowledged, the parties agreed that Newman's obligations to perform did not arise unless "Newman is elected as U.S. Representative to the Third Congressional District of Illinois . . . for the congressional term beginning in January of 2021." Compl. Ex. A § 1(a).

It is not relevant, therefore, whether or not Newman had implied authority upon execution of the contract, since she had actual (conditional) authority to do so. The condition precedent to formation of the contract did occur, and she is therefore bound by the signed agreement in her official capacity. Newman herself had the authority, once elected, to choose her own staff. *Congressional Handbook* at 4 ("Each Member is the employing authority; the Member determines the terms and conditions of employment and service for their staff.")

Dismissal is therefore not appropriate on the basis of lack of authority, since Newman had conditional authority as well as the discretion to choose her own staff.

### B. Plaintiff states a claim against Defendant in her individual capacity.

Newman is also liable in her individual capacity. The congressional guidelines to which Defendant cites make clear that elected representatives may staff their offices using their own personal funds. The Congressional Handbook explains, "Each Member is personally responsible for the payments of any official and representational expenses incurred that exceed the provided [Members' Representational Allowance ("MRA")] or that are incurred but are not reimbursable under these regulations." *Congressional Handbook* at 2 (emphasis added); *see also Id.* at 3 ("If a Member incurs an obligation to the U.S. House of Representatives and the amount of the obligation incurred exceeds the MRA, the Member shall pay the obligation from personal funds."). The Handbook further explains, "A Member may expend personal funds in support of official and representational duties." *Id.* at 2.

7

This case is therefore distinguishable from the *Melvin* authority Defendant cites. MTD p. 13 (*citing Melvin (Harry B.) v. State*, 41 Ill. Ct. Cl. 88, 99 (1989)). Whereas in *Melvin* the university did not have the authority to bind the state "to the payment of funds not available for expenditure," here Newman does in fact have the authority to expend her own personal funds for the employment of her staff. 41 Ill. Court. Cl. at 101. Similarly, the *1550 MP Rd. LLC* case Defendant cites, in which the contracting party was an unincorporated association with "no power to execute a valid real estate contract," is distinguishable because the defendant did not have authority to bind the principal. *1550 MP Rd. LLC v. Teamsters Loc. Union No. 700*, 2019 IL 123046, ¶ 29.

## C. The contract is not void due to public policy.

Finally, Defendant argues that the contract claim should be dismissed on the grounds of public policy. MTD pp. 14-15. To the contrary, declaring Defendant's promise to employ Plaintiff unenforceable would violate public policy. "[P]ublic policy itself strongly favors freedom to contract." *McClure Eng'g Assocs., Inc. v. Reuben H. Donnelley Corp.*, 95 Ill. 2d 68, 72 (1983); *Horne v. Elec. Eel Mfg. Co., Inc.*, 987 F.3d 704, 718 (7th Cir. 2021). Contracts will not be declared unenforceable on public policy grounds absent a "compelling reason . . . to relieve the defendant of the obligations it has voluntarily incurred." *Doyle v. Holy Cross Hosp.*, 186 Ill. 2d 104, 116 (1999); *see also In re Marriage of Newton*, 2011 IL App (1st) 090683, ¶ 39 ("A court will not declare a contract illegal unless it expressly contravenes the law or a known public policy of this State.").

As described in section II(A) *supra*, Defendant's contention that congressional employment contract must be "at will" lacks support and is contradicted by case law. In fact, the congressional representative herself maintains the authority to determine the terms and conditions of employment and to use her own personal funds to defray employment expenses. *Congressional Handbook* at 2, 4.

IV.  <u>Plaintiff seeks to amend the complaint to add a claim of promissory estoppel</u>

There is a presumption in favor of amendments to pleadings so that litigants are afforded an "opportunity to test a claim on the merits." *Lee v. Ne. Illinois Reg'l Commuter R.R. Corp.*, 912 F.3d 1049, 1052–53 (7th Cir. 2019).

Chehade seeks to amend his complaint to include a claim of promissory estoppel. For the reasons expressed in section II(A), sovereign immunity would not bar such a claim. If this Court finds that Newman lacked capacity to bind herself or the government in the employment contract, however, promissory estoppel would serve as an alternative theory of recovery.

The doctrine of promissory estoppel applies in the absence of a contract when a party induces action or forbearance through a promise, and injustice is avoided only through enforcement of that promise. *Newton Tractor Sales, Inc. v. Kubota Tractor Corp.*, 233 Ill. 2d 46, 51 (2009) (quoting Restatement (Second) of Contracts as section 90); *Boswell v. City of Chicago*, 69 N.E.3d 379, 387 (Ill. App. 2016) (noting that promissory estoppel is relevant in the absence of a contract and can be applied against government entities to avoid fraud or injustice).

To state a claim for promissory estoppel, a plaintiff must allege "that (1) defendant made an unambiguous promise to plaintiff, (2) plaintiff relied on such promise, (3) plaintiff's reliance was expected and foreseeable by defendants, and (4) plaintiff relied on the promise to its detriment." *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 827 (7th Cir. 2015) (*quoting Newton Tractor Sales, Inc. v. Kubota Tractor Corp.,* 233 Ill.2d 46 (2009)).

Here, given the facts that are already alleged, it is evident that Plaintiff can state a claim for promissory estoppel; Newman's promise of employment was unambiguous, Chehade foreseeably relied on this promise by refraining from running for office, and he then lost the opportunity to run for the office of Representative of the Third district as well as the opportunity to serve in a congressional position in her office and appoint his own staff. Compl. ¶¶ 8-9, 12, 14, Ex. A.

Plaintiff therefore asks that he be permitted to amend his complaint to include a claim of promissory estoppel.

Accordingly, Chehade respectfully requests that this Court DENY Defendant's motion to dismiss the instant action and GRANT Plaintiff's motion to amend the complaint to add a claim of promissory estoppel.

Respectfully submitted,


By: ___ /s/ Rima Kapitan _____
     Rima N. Kapitan
     One of Plaintiff's Attorneys

Rima N. Kapitan
Atty. No. 6286541
Kapitan Law Office
P.O. Box 6779
Chicago, Illinois 60680
rima@kapitanlaw.net
Ph: 312-566-9590
Fax: 312-566-9591


## CERTIFICATE OF SERVICE

I certify that I filed the foregoing memorandum electronically on April 26, 2021, which constitutes service on counsel for Defendant, who are registered participants in the CM/ECF system.


/s/ Rima Kapitan